UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____-CIV-_____/_____

NATALIA AMPUDIA, an individual,

    Plaintiff,

v.

MAPFRE INSURANCE COMPANY,
a New Jersey Corporation,
BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC.,
a Florida Corporation, and
AGERO DRIVER ASSISTANCE SERVICES, INC.,
a Delaware Corporation,

    Defendants.
_____/

## **COMPLAINT**

1.    Plaintiff, NATALIA AMPUDIA (hereinafter referred to as "Plaintiff" or "AMPUDIA"), is an individual residing in Miami-Dade County, Florida whose race/color is Hispanic and ethnicity/ancestry is Peruvian.

2.    AMPUDIA brings this action against Defendants, MAPFRE INSURANCE COMPANY, a New Jersey Corporation, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., a Florida Corporation, and AGERO DRIVER ASSISTANCE SERVICES, INC., a Delaware Corporation, for alleged race and national origin discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000 *et seq.,* the Florida Civil Rights Act (FCRA), Florida Statutes §760.01 *et seq.*, and 42 U.S.C. §1981.

3.    At all times material to this Complaint, Defendants, MAPFRE INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO DRIVER ASSISTANCE SERVICES, INC., owned and operated a global insurance business d/b/a

1

MAPFRE Insurance, including in Miami, Florida in Miami-Dade County, within the jurisdiction of this Court.

4. At all times material to this Complaint, Defendants, MAPFRE INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO DRIVER ASSISTANCE SERVICES, INC, directly or indirectly, acted in the interest of an employer toward AMPUDIA, including without limitation directly or indirectly controlling the terms of employment and compensation of Plaintiff. Alternately, Defendants, MAPFRE INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO DRIVER ASSISTANCE SERVICES, INC., and each of their respective divisions, subsidiaries or affiliates, and parent entities, however constituted, were joint employers of AMPUDIA because each, respective division, subsidiary, or affiliate acted directly or indirectly in the interest of the other in relation to AMPUDIA. As a second alternative, Defendants, MAPFRE INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO DRIVER ASSISTANCE SERVICES, INC., and each of their divisions, subsidiaries or affiliates, and parent entities, however constituted, were joint employers and/or successor employers of AMPUDIA because they commonly controlled the terms of compensation and employment of Plaintiff. As a final alternative, Defendants, MAPFRE INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO DRIVER ASSISTANCE SERVICES, INC., and each of their divisions, subsidiaries or affiliates, and parent entities, however constituted, directly or indirectly acted in the interest of an employer toward AMPUDIA all material times to this Complaint, including without limitation directly or indirectly controlling the terms of employment and compensation of Plaintiff.

5. Jurisdiction is conferred on this Court by 28 U.S.C. §§1331, 1337, 1343, and 1367.

6. The events, or a substantial part of the events, giving rise to this action, occurred in Miami-Dade County within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division.

7. At all times material to this Complaint, Defendants, MAPFRE INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO DRIVER ASSISTANCE SERVICES, INC., individually and/or collectively, had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in 2019, 2020, and 2021.

8. AMPUDIA was born and raised in Peru.

9. AMPUDIA's native language is Spanish, and at all times material to this Complaint, Plaintiff has had an accent when she speaks in English but Plaintiff has been fluent in reading and speaking English as her second language, such that Plaintiff has been bilingual in English and Spanish.

10. On May 12, 2003, AMPUDIA first began working for MAPFRE Insurance as a customer service employee in Miami, Florida.

11. Between May 2003 and May 2020, AMPUDIA successfully performed her essential duties as a bilingual customer service employee for MAPFRE INSURANCE COMPANY and BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC. in Miami, Florida and Plaintiff received numerous awards and commendations for her job performance and long tenured service to MAPFRE Insurance.

12. In or around June 2020, at which time AMPUDIA had been employed by MAPFRE INSURANCE COMPANY and BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC. as a bilingual Customer Care Relations Specialist in Miami, Florida for approximately Seventeen

(17) years and was being paid based upon a regular rate of $15.00 per hour plus approximately $360.00 per month in bonuses, AGERO DRIVER ASSISTANCE SERVICES, INC. purchased MAPFRE Insurance.

13. As part of AGERO's acquisition of MAPFRE Insurance, in October 2020, Defendants were evaluating keeping certain customer service employees and terminating the employment of other employees in customer service, as a result of which on or around October 5, 2020, AMPUDIA applied for a Customer Service Representative position with Defendants, which position was listed by Defendants as a "bilingual preferred" job.

14. On or around Thursday, October 29, 2020, AMPUDIA was interviewed by MAPFRE Insurance Supervisor, Zenepe Serifovski (White/American), for the Customer Service Representative position and during the interview Ms. Serifovski stated to Plaintiff: "I see you attended Regina Pacis High School," to which Plaintiff responded: "Yes, from Lima, Peru."

15. Ms. Serifovski subsequently informed AMPUDIA that she would e-mail Defendants' Human Resources (HR) Recruiter and Plaintiff would hear back about the Customer Service Representative position by Friday, October 30, 2020.

16. However, later on October 29, 2020, Defendants' Sr. HR Manager, Crystal Dougherty, from MAPFRE Insurance's corporate office in Webster, Massachusetts, notified AMPUDIA that although Ms. Serifovski enjoyed meeting with Plaintiff, Defendants were not offering Plaintiff continued employment as a Customer Service Representative purportedly because Defendants often get customers who are very unhappy with their billing and sometimes yell and do not treat Customer Service Representatives answering the telephone with the respect that is deserved, such that despite AMPUDIA's almost two (2) decades of customer service experience with MAPFRE Insurance and Plaintiff having made it clear during the interview with

Ms. Serifovski that Plaintiff knew how to handle such difficult customer situations, Defendants "would not want to subject [AMPUDIA] to that on a continuous basis."

17. Based upon information and belief, other MAPFRE Insurance customer service employees of Defendants who interviewed for the same Customer Service Representative position as AMPUDIA in October 2020 but who did not have an accent like Plaintiff, had less experience than Plaintiff, and/or had a different national origin than Plaintiff but were offered the position and/or hired by Defendants in late 2020 over Plaintiff despite being less qualified individuals included but were not necessarily limited to: (i) Amber Teed (White/American), a MAPFRE Insurance customer service employee who had only two (2) years of experience; (ii) Victor Ruiz Garcia (Hispanic/Puerto Rican), who had less than two (2) years of experience; (iii) Refil Pichardo, who had less than two (2) years of experience; (iv) Nodier Nunez, who had less than one (1) year of experience.

18. Moreover, based upon information and belief, of the approximately Ten (10) employees in the same department as AMPUDIA in October 2020 at MAPFRE Insurance, Defendants offered jobs to and/or hired all of the other customer service employees in the department except Plaintiff.

19. AMPUDIA's race/national origin, Peruvian Hispanic, was the reason Defendants did not hire Plaintiff as a Customer Service Representative in October 2020, in violation of Title VII, the FCRA, and Section 1981.

20. The reasons proffered and/or relied upon by Defendants in October 2020 for not hiring AMPUDIA as a Customer Service Representative were false and a pretext for discrimination against Plaintiff because of AMPUDIA's race/color and/or ethnicity/ancestry, in violation of Title VII, the FCRA, and Section 1981.

21. The final day AMPUDIA worked for Defendants as a Customer Care Relations Specialist was November 30, 2020, after which Plaintiff's employment with Defendants was terminated.

22. The reasons proffered and/or relied upon by Defendants in November 2020 for terminating AMPUDIA's employment were false and a pretext for discrimination against Plaintiff because of AMPUDIA's race/color and/or ethnicity/ancestry, in violation of Title VII, the FCRA, and Section 1981.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

23. On November 25, 2020, AMPUDIA filed a Charge of Discrimination against MAPFRE Insurance with the United States Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR)/Miami-Dade Commission on Human Rights alleging national origin discrimination in violation of Title VII and the FCRA. A copy of AMPUDIA's EEOC Charge, Charge No. 15C-2021-00018, is attached hereto as Exhibit A.

24. On November 3, 2021, the EEOC issued a Notice of Right to Sue to AMPUDIA in connection with Charge No. 15C-2021-00018, see Exhibit B.

25. This Complaint is being filed with the Court within Ninety (90) days of AMPUDIA's receipt of the EEOC's Notice of Right to Sue in connection with Charge No. 15C-2021-00018 and Plaintiff has exhausted all administrative remedies on the Title VII claims pled in the Complaint.

26. As of January 17, 2022, more than One Hundred and Eighty (180) days have passed since the filing of AMPUDIA's Charge of Discrimination on November 25, 2020 and the FCHR did not issue any determination concerning AMPUDIA's Charge. As a result, pursuant to F.S. §760.11(18), which provides that in the event that the FCHR fails to conciliate or determine

whether there is reasonable cause on any complaint under that section within 180 days of the filing of the complaint, an aggrieved person may file a civil action "as if the commission determined that there was reasonable cause," AMPUDIA has exhausted all administrative remedies under Florida as well as Federal law.

27.     All conditions precedent to the institution of this action have either occurred or been waived.

## COUNT I
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e ET SEQ. – RACE/NATIONAL ORIGIN DISCRIMINATION

Plaintiff, NATALIA AMPUDIA, reasserts and reaffirms the allegations of Paragraphs 1 through 27 as if fully set forth herein and further states that this is an action against MAPFRE INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO DRIVER ASSISTANCE SERVICES, INC. for race/national discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

28.     Title VII of the Civil Rights Act of 1964, as amended, provides that it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1).

29.     At all times material to this action, Defendants, MAPFRE INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO DRIVER ASSISTANCE SERVICES, INC., individually and/or collectively, had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in 2019, 2020, and 2021 within the meaning of 42 U.S.C. §2000e(b).

30.     Between approximately October 2020 and November 2020, AMPUDIA was

subjected to disparate treatment by Defendants because of her race/national origin, Peruvian Hispanic, by, *inter alia*, Defendants not hiring Plaintiff as a Customer Service Representative and terminating AMPUDIA's employment because of Plaintiff's race/national origin, in violation of 42 U.S.C. §2000e-2(a)(1).

31. Moreover, Defendants treated other similarly situated customer service employees more favorably than AMPUDIA between approximately October 2020 and November 2020 by, *inter alia*, hiring less qualified non-Peruvian employees and/or Hispanic employees with less of an accent than Plaintiff because of unlawful disparate treatment against AMPUDIA based upon her race/national origin, in violation of 42 U.S.C. §2000e-2(a)(1).

32. Defendants' disparate treatment of AMPUDIA in 2020 because of her race/national origin was so severe and pervasive that it altered, the terms, conditions, and privileges of AMPUDIA's employment with Defendants culminating with the termination of Plaintiff's employment in November 2020.

33. A motivating factor behind Defendants' decisions not to hire Plaintiff as a Customer Service Representative in October 2020 and the termination of AMPUDIA's employment in November 2020 was Plaintiff's race/national origin, Peruvian Hispanic, in violation of 42 U.S.C. §2000e-2(a)(1).

34. Defendants' violations of AMPUDIA's rights under Title VII were intentional and were done with malice and reckless disregard for AMPUDIA's rights as guaranteed under the laws of the United States.

35. AMPUDIA has suffered lost earnings and employment benefits, emotional distress, loss of self-esteem and other injuries as a direct result of Defendants' violations of 42 U.S.C. §2000e-2(a)(1).

36. Pursuant to 42 U.S.C. §2000e-5(k) and §1988(b), AMPUDIA is entitled to recover from Defendants her reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff, NATALIA AMPUDIA, demands judgment against Defendants, jointly and severally, MAPFRE INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO DRIVER ASSISTANCE SERVICES, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not limited to front pay, punitive damages, injunctive relief, interest, attorneys' fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

## COUNT II
## RACE/NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

Plaintiff, NATALIA AMPUDIA, reasserts and reaffirms the allegations set forth in paragraphs 1 through 27 above and further states that this is an action against MAPFRE INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO DRIVER ASSISTANCE SERVICES, INC. for race/national origin discrimination in violation of Florida Statutes §760.10(1).

37. The Florida Civil Rights Act provides that it is an unlawful employment practice for an employer "[t]o discharge . . . any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." F.S. §760.10(1)(a).

38. At all times material to this action, Defendants, MAPFRE INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO

9

DRIVER ASSISTANCE SERVICES, INC., individually and/or collective, constituted an employer within the meaning of F.S. §760.02(7).

39. At all times material to this action, AMPUDIA was an employee of Defendants, MAPFRE INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO DRIVER ASSISTANCE SERVICES, INC., within the meaning of F.S. §760.10(1)(a).

40. At all times material to this action, AMPUDIA has been an aggrieved person within the meaning of F.S. §760.02(10).

41. Between approximately October 2020 and November 2020, AMPUDIA was subjected to disparate treatment by Defendants because of her race/national origin, Peruvian Hispanic, by, *inter alia*, Defendants hiring less qualified non-Peruvians as customer service employees and terminating AMPUDIA's employment because of Plaintiff's race/national origin, in violation of F.S. §760.10(1).

42. Defendants treated other similarly situated customer service employees more favorably than AMPUDIA between approximately October 2020 and November 2020 by, *inter alia*, hiring less qualified non-Peruvian employees and/or Hispanic employees with less of an accent than Plaintiff because of unlawful disparate treatment against AMPUDIA based upon her race/national origin, in violation of F.S. §760.10(1).

43. Defendants' disparate treatment of AMPUDIA in 2020 because of her race/national origin was so severe and pervasive that it altered, the terms, conditions, and privileges of AMPUDIA's employment with Defendants culminating with the termination of Plaintiff's employment in November 2020.

44. In November 2020, Defendants terminated AMPUDIA's employment because of

Plaintiff's race/national origin, Peruvian Hispanic, in violation of F.S. §760.10(1).

45. A motivating factor behind Defendants' decisions not to hire Plaintiff as a Customer Service Representative in October 2020 and the termination of AMPUDIA's employment in November 2020 was Plaintiff's race/national origin, Peruvian Hispanic, in violation of F.S. §760.10(1).

46. Defendants' violations of AMPUDIA's rights under F.S. §760.10(1)(a) were intentional and were done with malice and reckless disregard for AMPUDIA' rights as guaranteed under the laws of the State of Florida, such that AMPUDIA is entitled to punitive damages against Defendants pursuant to F.S. §760.11(5).

47. AMPUDIA has suffered lost earnings, emotional distress, loss of self-esteem, and other damages as a direct result of Defendants' violations of F.S. §760.10(1).

48. Pursuant to F.S. §760.11(5), AMPUDIA is entitled to recover her reasonable attorneys' fees and costs from Defendants' as a result of Defendants' violations of the FCRA.

WHEREFORE, Plaintiff, NATALIA AMPUDIA, demands judgment against Defendants, jointly and severally, MAPFRE INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO DRIVER ASSISTANCE SERVICES, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, equitable relief, interest, costs, attorneys' fees, expert fees and such other and further relief as this Honorable Court deems proper.

## COUNT III
## UNLAWFUL DISAPARATE TREATMENT IN VIOLATION OF 42 U.S.C. §1981

Plaintiff, NATALIA AMPUDIA, reasserts and reaffirms the allegations of Paragraphs 1 through 27 as if fully set forth herein and further states that this is an action against MAPFRE

11

INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO DRIVER ASSISTANCE SERVICES, INC. for violations of 42 U.S.C. §1981.

49. 42 U.S.C. §1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

50. Moreover, for purposes of 42 U.S.C. §1981, the term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

51. Between approximately October 2020 and November 2020 AMPUDIA was subjected to disparate treatment by Defendants because of Plaintiff's race/color, Hispanic, and/or Plaintiff's ethnicity/ancestry, Peruvian, in violation of 42 U.S.C. §1981.

52. Between approximately October 2020 and November 2020, AMPUDIA was subjected to disparate treatment by Defendants because of her race/national origin, Peruvian Hispanic, by, *inter alia*, Defendants hiring less qualified non-Peruvians as customer service employees and terminating AMPUDIA's employment because of Plaintiff's race/national origin, in violation of 42 U.S.C. §1981.

53. Defendants treated other similarly situated customer service employees more favorably than AMPUDIA between approximately October 2020 and November 2020 by, *inter alia*, hiring less qualified non-Peruvian employees and/or Hispanic employees with less of an accent than Plaintiff because of unlawful disparate treatment against AMPUDIA based upon her race/national origin, in violation of 42 U.S.C. §1981.

54. Defendants' disparate treatment of AMPUDIA in 2020 because of her race/national origin was so severe and pervasive that it altered, the terms, conditions, and privileges of AMPUDIA's employment with Defendants culminating with the termination of Plaintiff's employment in November 2020.

55. In November 2020, Defendants terminated AMPUDIA's employment because of Plaintiff's race/national origin, Peruvian Hispanic, in violation of 42 U.S.C. §1981.

56. A motivating factor behind Defendants' decisions not to hire Plaintiff as a Customer Service Representative in October 2020 and the termination of AMPUDIA's employment in November 2020 was Plaintiff's race/national origin, Peruvian Hispanic, in violation of 42 U.S.C. §1981.

57. When Defendants did not hire Plaintiff for a continued role as a Customer Service Representative in October 2020 and subsequently terminated AMPUDIA's employment in November 2020 for reasons that Defendants knew to be false and were instead a pretext to attempt to cover up unlawful discrimination against AMPUDIA because of her race/national origin, Peruvian Hispanic, Defendants violated 42 U.S.C. §1981.

58. Defendants' violations of AMPUDIA's rights under 42 U.S.C. §1981 were intentional and undertaken with malice and a reckless disregard for AMPUDIA's rights as guaranteed under the laws of the United States. As such, AMPUDIA is entitled to punitive damages from Defendants pursuant to 42 U.S.C. §1981a(a)(1).

59. AMPUDIA has suffered lost earnings, emotional distress, loss of self-esteem, and other injuries and damages as a direct result of Defendants' violations of 42 U.S.C. §1981.

60. Pursuant to 42 U.S.C. §1988(b), AMPUDIA is entitled to recover her reasonable attorneys' fees and costs from Defendants.

WHEREFORE, Plaintiff, NATALIA AMPUDIA, demands judgment against Defendants, jointly and severally, MAPFRE INSURANCE COMPANY, BRICKELL FINANCIAL SERVICES–MOTORCLUB, INC., and AGERO DRIVER ASSISTANCE SERVICES, INC., for back pay, employment benefits, other compensation including bonuses or benefits, compensatory damages, punitive damages, equitable relief including but not limited to front pay, injunctive relief, interest, attorneys' fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated:  January 17, 2022              Respectfully submitted,

By: **KEITH M. STERN**
Keith M. Stern, Esquire
Florida Bar No. 321000
E-mail:  employlaw@keithstern.com
LAW OFFICE OF KEITH M. STERN, P.A.
80 S.W. 8th Street, Suite 2000
Miami, Florida 33130
Telephone:  (305) 901-1379
Attorneys for Plaintiff

# EXHIBIT A

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | F-8490 |
| [X] EEOC | 15C-2021-00018 |

**Miami-Dade Commission on Human Rights** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Natalia Ampudia | ▓ | ▓ |

| Street Address | City, State and ZIP Code |
|---|---|
| ▓ | ▓ |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| MAPFRE | 15+ | 508-949-4818 |

| Street Address | City, State and ZIP Code |
|---|---|
| 11 Gore Road | Webster, MA 01570 |

**DISCRIMINATION BASED ON** (Check appropriate box(es))

[ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [X] NATIONAL ORIGIN
[ ] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest          Latest
                  10/29/2020

[ ] CONTINUING ACTION

**THE PARTICULARS ARE** (*If additional paper is needed, attach extra sheet(s)*):

I am Peruvian. I was raised in Peru; My native language is Spanish, however I learned how to speak, write, and read English as my second language. I began working for MAPFRE in 2003. I am currently a Customer Care Relations Specialist.

On October 5, 2020, I applied for a Customer Service II (remote) (CS II) position and was granted an interview. On October 29, 2020, I met with Zenepe Serifovski (White/American) and during the interview she stated "I see you attended Regina Pacis High school," I responded "Yes, from Lima, Peru." Ms. Serifovski then advised that she would email the HR recruiter and I would hear back from them by Friday. I was subsequently told via email that I was not selected for the position. I believe that the only reason I was denied the position was due to my accent. In the email that I received state that the "customers are going to treat me disrespectfully".

The failure to hire me caused me great confusion due the fact that I had been with the company for over seventeen (17) years and had received a plethora of compliments and reward incentives for my excellent customer service. In addition, the job description specified "bilingual preferred." Afterwards, I noticed that the employees interviewed for the CS II position did not have an accent and had less experience than me yet were granted the position. Specifically, Amber Teed (White/American), my co-worker, had only two years of experience; Refil Pichardo (Hispanic) had less than two years of experience; Victor Ruiz Garcia (Hispanic) had less than two years of experience; Nodier Nunez (Hispanic/ no accent) had less than one year of experience; and Oscar Vidal (Hispanic/no accent) had less than one year of experience but all five were offered the job.

I believe that I have been discriminated against based on my national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended; Chapter 760 of the Florida Statutes, as amended; and Chapter 11A of the Miami-Dade County Code; as amended.

| | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 11/25/2020    *Natalia Ampudia*<br>*Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

# EXHIBIT B

EEOC Form 161 (11/2020)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Natalia Ampudia

From: Miami District Office
Miami Tower, 100 S E 2nd Street
Suite 1500
Miami, FL 33131

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

EEOC Charge No.: 15C-2021-00018
EEOC Representative: Maria E. de Paz, State & Local Coordinator
Telephone No.: (786) 648-5826

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Maria E. de Paz_ for
Paul V. Valenti,
District Director

November 3, 2021
(Date Issued)

Enclosures(s)

cc:

MAPFRE
Michael Murphey, Esq. Senior Counsel
211 Main Street
Webster, MA 01570